UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SAMANTHA CARTER-CARR,

                      Plaintiff,

       v.

ANDREW M. SAUL,[1] Commissioner of
  Social Security,

                      Defendant.
_____

**DECISION
and
ORDER

18-CV-1063F
(consent)**

APPEARANCES:            LAW OFFICES OF KENNETH R. HILLER, PLLC
                                 Attorneys for Plaintiff
                                 CORINNE MANFREDI, of Counsel
                                 6000 North Bailey Avenue, Suite 1A
                                 Amherst, New York 14226

                                 JAMES P. KENNEDY, JR.
                                 UNITED STATES ATTORNEY
                                 Attorney for Defendant
                                 Federal Centre
                                 138 Delaware Avenue
                                 Buffalo, New York 14202;

                                 ANDREA LAURA LECHLEITNER
                                 Acting Regional Chief Counsel
                                 Social Security Administration
                                 Office of General Counsel
                                 26 Federal Plaza – Room 3904
                                 New York, New York 10278, and

                                 FRANCIS D. TANKARD, and
                                 DENNIS J. CANNING
                                 Special Assistant United States Attorneys, of Counsel
                                 Social Security Administration
                                 Office of General Counsel
                                 601 E. 12th Street, Room 965
                                 Kansas City, Missouri 64106

---

[1] Andrew M. Saul became the Commissioner of the Social Security Administration on June 17, 2019, and, pursuant to Fed.R.Civ.P. 25(d), is substituted as Defendant in this case. No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

## JURISDICTION

On October 7, 2019, this matter was reassigned to the undersigned before whom the parties to this action consented pursuant to 28 U.S.C. § 636(c) to proceed in accordance with this court's June 29, 2018 Standing Order (Dkt. No. 14). The matter is presently before the court on motions for judgment on the pleadings filed by Plaintiff on April 8, 2019 (Dkt. No. 8), and by Defendant on June 7, 2019 (Dkt. No. 12).

## BACKGROUND

Plaintiff Samantha Carter-Carr ("Plaintiff"), brings this action under Title II and XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g), seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's applications filed with the Social Security Administration ("SSA"), on November 6, 2014, for Social Security Disability Insurance ("SSDI"), and Supplemental Security Income ("SSI") (together, "disability benefits"). Plaintiff alleges that she became disabled on May 1, 2014, after suffering neck and back injuries and depression resulting from a car accident involving Plaintiff on April 30, 2014. (R.[2] 317). Plaintiff's application initially was denied on February 6, 2015 (R. 93), and at Plaintiff's timely request, on May 11, 2017, a hearing was held in Falls Church, Virginia by Administrative Law Judge Roxanne Fuller ("the ALJ"), with Plaintiff appearing via teleconference in Buffalo, New York. (R. 64-92). Appearing and testifying at the hearing with Plaintiff was Plaintiff's non-legal representative Lawrence Colden, Jr. ("Mr. Colden"), and vocational expert David Van Winkle ("the VE"). (R. 85-92). On July 12, 2017, the ALJ issued a decision

---
[2] References to "R" are to the page of the Administrative Record electronically filed by Defendant on February 6, 2019 (Dkt. No. 5).

denying Plaintiff's claim (R. 48-60) ("the ALJ's decision"), which Plaintiff timely appealed to the Appeals Council. (R. 4). On July 13, 2018, the Appeals Council issued a decision denying Plaintiff's request for review, rendering the ALJ's decision the Commissioner's final decision. (R. 1-4).

On April 8, 2019, Plaintiff moved for judgment on the pleadings (Dkt. No. 8) ("Plaintiff's Motion"), attaching the Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 8-1) ("Plaintiff's Memorandum"). On June 7, 2019, Defendant moved for judgment on the pleadings (Dkt. No. 12) ("Defendant's Motion"), attaching the Commissioner's Brief in Support of the Defendant's Motion for Judgment on the Pleadings and in Response to Plaintiff's Brief Pursuant to Local Standing Order on Social Security Cases (Dkt. No. 12-1) ("Defendant's Memorandum"). Plaintiff filed on June 27, 2019, Plaintiff's Response to the Commissioner's Brief in Support and in Further Support for Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 13) ("Plaintiff's Reply"). Oral argument was deemed unnecessary.

Based on the following, Plaintiff's Motion is DENIED; Defendant's Motion is GRANTED.

## **FACTS**[3]

Plaintiff Samantha Carter-Carr ("Plaintiff" or "Carter-Carr"), born July 31, 1983, was 30 years old as of April 30, 2014, Plaintiff's alleged disability onset date ("DOD"), is married, a high school graduate with two years of college, has two children, and lives with her husband and two children. (R. 71). Plaintiff's past relevant work includes work

---

[3] In the interest of judicial economy, recitation of the Facts is limited to only those necessary for determining the pending motions for judgment on the pleadings.

as a temporary clerical worker, collections agent, medical assistant and mortgage closing specialist. (R. 88).

On April 30, 2014, Plaintiff sought treatment from Erie County Medical Center ("E.C.M.C."), for back, neck, and right knee pain after being involved in a car accident. Vivian Tan, M.D. ("Dr. Tan"), reviewed X-rays of Plaintiff's cervical, lumbar, and right knee that were normal. (R. 314-16).

Plaintiff returned to E.C.M.C. on April 30, 2015, for neck and back pain after being involved in a second car accident. (R. 317). On May 12, 2014, Mikhail Strut, M.D. ("Dr. Strut"), completed a consultative examination on Plaintiff and diagnosed Plaintiff with cervical strain, radiculopathy, spine pain, lumbar strain with radiculopathy and muscle sprain, and prescribed Diazepam (pain) and a soft neck collar. (R. 322). Graham R. Huckell, M.D. ("Dr. Huckell"), a physician with Pinnacle Orthopedic and Spine Specialists ("Pinnacle"), completed physical examinations of Plaintiff on October 6, 2014 (R. 350), December 16, 2014 (R. 697-700), January 15, 2015 (R. 680), June 2, 2015 (R. 666-67), June 8, 2015 (R. 663), and July 24, 2015 (R. 646-68). On June 27, 2014, Dr. Huckell reviewed a magnetic resonance imaging scan ("MRI") of Plaintiff's right knee and assessed Plaintiff with internal derangement of her right knee, a right knee contusion (bruise), right knee patella small chondral (cartilage) injury, and opined that Plaintiff was temporarily disabled because of her right knee. (R. 648-49).

On January 30, 2015, Donna Miller, D.O. ("Dr. Miller"), completed a consultative internal medical examination on Plaintiff, diagnosed Plaintiff with chronic neck pain status post fusion surgery, chronic low back pain, right knee pain, and opined that

4

Plaintiff had a severe limitation for heavy lifting, bending, carrying, reaching, and pulling. (R. 386-88).

On June 17, 2015, Plaintiff's care was transferred to A. Marc Tetro, M.D. ("Dr. Tetro"), at Pinnacle for treatment of Plaintiff's right shoulder pain (R. 658), where on June 30, 2015, Dr. Tetro provided a steroid injection to Plaintiff's right shoulder (R. 655), and on October 20, 2015, noted that Plaintiff was disabled and unable to work. (R. 609-11).

On August 12, 2015, Robert J. Graham, Ph.D. ("Dr. Graham"), completed a psychotherapy intake note on Plaintiff, noted that Plaintiff reported anxiety and post-traumatic stress from car accidents that Plaintiff was involved in on April 30, 2014, and May 9, 2015, and evaluated Plaintiff with good insight, judgment, and concentration, normal thought content, perception, flow of thought, appropriate interview behavior, intact memory. (R. 410). On August 19, 2015, Dr. Graham diagnosed Plaintiff with post-traumatic stress disorder ("PTSD"), and provided counseling to Plaintiff (R. 408). On September 2, 2015, Dr. Graham provided psychotherapy treatment to Plaintiff and noted that Plaintiff's mood was anxious, with appropriate affect. (R. 407). On September 16, 2015, Dr. Graham provided exposure[4] therapy for Plaintiff with applied relaxation (R. 404), and on September 21, 2015 (R. 402), September 30, 3015 (R. 400-01), October 23, 2015 (R. 398-99), and November 3, 2015 (R. 396-97), noted that Plaintiff appeared anxious and depressed and provided cognitive challenging[5] and exposure therapy to Plaintiff.

---

[4] Exposure therapy exposes patients to the target source of anxiety.
[5] Cognitive challenging therapy is the therapeutic process of identifying and challenging negative thoughts.

5

On February 1, 2016, Dr. Tetro performed arthroscopic surgery on Plaintiff to repair a labral tear in Plaintiff's right shoulder (R. 567), and provided follow-up treatment for Plaintiff's shoulder on February 23, 2016 (R. 555-57), March 25, 2016 (R. 546-49), April 15, 2016 (R. 526-29), May 27, 2016 (R. 515), August 10, 2016 (R. 508-11), and November 2, 2016 (R. 504-06).

## **DISCUSSION**

**1.     Standard and Scope of Judicial Review**

A claimant is "disabled" within the meaning of the Act and entitled to disability benefits when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1); 1382c(a)(3)(A). A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or if the decision is based on legal error. 42 U.S.C. §§ 405(g), 1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. It is not, however, the district court's function to make a *de novo* determination as to whether the claimant is disabled; rather,

6

"the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence. *Id.* "Congress has instructed . . . that the factual findings of the Secretary,[6] if supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d60, 62 (2d Cir. 1982).

**2.     Disability Determination**

The definition of "disabled" is the same for purposes of receiving SSDI and SSI benefits. *Compare* 42 U.S.C. § 423(d) *with* 42 U.S.C. § 1382c(a). The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability benefits. 20 C.F.R. §§ 404.1520 and 416.920. *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982). If the claimant meets the criteria at any of the five steps, the inquiry ceases and the claimant is not eligible for disability benefits. 20 C.F.R. §§ 404.1520 and 416.920. The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which the benefits are claimed. 20 C.F.R. §§ 404.1520(b) and 416.920(b). The second step is whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities, as defined in the relevant regulations. 20 C.F.R. §§ 404.1520(c) and 416.920(c). Third, if there is an impairment and the impairment, or its equivalent, is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("Appendix 1" or "the Listings"), and meets the duration requirement of at least 12 continuous months, there is a

---

[6] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

7

presumption of inability to perform substantial gainful activity, and the claimant is deemed disabled, regardless of age, education, or work experience. 42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d). As a fourth step, however, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" or "RFC" which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding the limitations posed by the applicant's collective impairments, *see* 20 C.F.R. 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any past relevant work ("PRW"). 20 C.F.R. §§ 404.1520(e) and 416.920(e). If the applicant remains capable of performing PRW, disability benefits will be denied, *id.*, but if the applicant is unable to perform PRW relevant work, the Commissioner, at the fifth step, must consider whether, given the applicant's age, education, and past work experience, the applicant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c). The burden of proof is on the applicant for the first four steps, with the Commissioner bearing the burden of proof on the final step. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).

**Residual functional capacity**

The so-called residual functional capacity or RFC, is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8

hours a day, for 5 days a week, or an equivalent work schedule." SSR[7] 96-8p; 1996 WL 374184, at *1. In making an RFC assessment, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on those facts, along with the claimant's subjective symptoms of pain and other asserted limitations. 20 C.F.R. §§ 404.1545, 416.945. The "RFC is not the *least* an individual can do despite his or her limitations, but the *most*." SSR 96-8p; 1996 WL 374184, at * 1 (italics in original). "The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments, including the impact of any related symptoms." *Id*. If there is "no allegation of a physical or mental limitation or restriction of a specific functional capacity, and no information in the case record that there is such a limitation or restriction, the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity." *Id*. "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . . Only after that may the RFC be expressed in terms of the exertional levels of work, sedentary,[8] light, medium, heavy, and very heavy." *Id*. Although the RFC assessment is reserved for the commissioner, the assessment remains a medical determination that must be based on medical evidence of record, such that the ALJ may not substitute her own judgment for competent medical opinion. *Walker v. Astrue*, 2010 WL 2629832, at * 6 (W.D.N.Y. June 11, 2010) (citing 20 C.F.R. §§ 404.1527(e)(2), and 416.927(e)(2)),

---

[7] "SSR" is the acronym for "Social Security Rulings" which are agency rulings "published under the authority of the Commissioner of Social Security and are binding on all components of the Administration. Such rulings represent precedent final opinions and orders and statements of policy and interpretations that [the SSA] ha[s] adopted." 20 C.F.R. § 402.35(b)(1).

[8] Sedentary work involves lifting no more than 10 pounds at a time or occasionally lifting or carrying articles like docket files, ledgers and small tools.

*report and recommendation adopted*, 2010 WL 2629821 (W.D.N.Y. June 28, 2010). The Second Circuit has upheld an RFC assessment where the ALJ discounted the claimant's only treating physician's medical source statement without remanding for acquisition of another medical source statement where there was sufficient evidence in the record to permit the ALJ to assess the RFC, including years of treatment notes and evidence of the claimant's social and recreational activities. *See Monroe v. Comm'r of Soc. Sec.*, 676 Fed. Appx. 5, 6-9 (2d Cir. Jan. 18, 2017). Further, "'where the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a common sense judgment about functional capacity even without a physician's assessment. . . .'" *Walker*, 2010 WL 2629832, at * 6 (quoting *Manso-Pizarro v. Secretary of Health and Human Services*, 76 F.3d 15, 17 (1st Cir. 1996)). Moreover, where substantial evidence in the record supports the ALJ's RFC assessment, there is no "gap" in the medical record requiring the ALJ to further develop the record by obtaining an additional medical source statement from one of Plaintiff's treating physicians. *See Pellam v. Astrue*, 508 Fed. Appx. 87, 90 (2d Cir. Jan. 28, 2013) (citing *Rosa v. Callahan*, 168 F.3d 72, 79 n. 5 (2d Cir. 1999) ("where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information. . . .")).

In the instant case, the ALJ found that Plaintiff met the insured status requirements for SSDI through December 31, 2018 (R. 48), had not engaged in substantial gainful activity since Plaintiff's alleged disability onset date of April 30, 2014, suffers from the severe impairments of cervical degenerative disc disease with radiculopathy (pinched nerve) and herniation, lumbar sprain with radiculopathy, right

shoulder osteoarthritis/sprain with rotator cuff tendonitis, depression, and PTSD (R. 50), does not have an impairment or combination of impairments meeting or medically equal to the severity of any listed impairment in Appendix 1 (R. 51-53), retains the RFC to perform sedentary work with limitations of the option to sit and stand after one hour, occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling, frequent reaching with the dominant right arm handling objects with gross manipulation, exposure to moving mechanical parts, operation of a motor vehicle, exposure to unprotected heights, able to perform routine and repetitive tasks with occasional interaction with the public (R. 53), is unable to perform past relevant work (R. 59), and that in light of Plaintiff's age, education, work experience and RFC, jobs exist in significant numbers in the national economy that Plaintiff can perform that include document preparer, circuit board assembler and sorter such that Plaintiff is not disabled as defined under the Act. (R. 60). The ALJ granted great weight to Dr. Miller's consultative opinion that Plaintiff has a severe limitation to heavy lifting, bending, carrying, reaching and pulling (R. 58) (referencing R. 388), and limited weight to Dr. Tetro's finding that Plaintiff was temporarily disabled (R. 58) (referencing R. 609).

Plaintiff does not contest the ALJ's findings with regard to the first three steps of the five-step analysis but argues the ALJ's determination of Plaintiff's RFC at the fourth step is erroneous as the ALJ failed to include Dr. Miller's findings in the ALJ's residual functional capacity assessment of Plaintiff, Plaintiff's Memorandum at 28, and failed to obtain a mental health functional assessment from a treating source on Plaintiff's non-exertional limitations. *Id.* at 30. Defendant maintains that the ALJ was not required to adopt the entirety of Dr. Miller's findings, Defendant's Memorandum at 11-13,

11

sufficiently developed Plaintiff's mental health impairment as Plaintiff's mental health findings were typically normal, and Plaintiff's prescribed medications improved her mental health symptoms. Defendant's Memorandum at 14-6. Plaintiff's argument is without merit.

A plain reading of the ALJ's decision establishes that it sets forth sufficient specificity to allow the court to determine that the ALJ's residual functional capacity of Plaintiff is supported by substantial evidence. *See Swanson v. Colvin,* 2013 WL 5676028, at *6 (W.D.N.Y. Oct. 17, 2017) (ALJ not required to separately discuss each exertional function where claimant's RFC is set forth with sufficient specificity to permit the court to determine whether the ALJ's decision is supported by substantial evidence) (citing *Campbell v. Astrue*, 465 Fed. App'x. 4, 6 (2d Cir. 2012)). The ALJ reviewed the extensive medical evidence in the record (R. 51-60), including Plaintiff's testimony that she prefers not to be around other people (referencing R. 73), spends most of her time in the house, is able to pay bills, needs help with household chores and assistance getting out of the bathtub (R. 52,526), that medication improved her mental health symptoms (referencing 7, 12, 16, 22, 34-35), and included such evidence in the ALJ's residual functional capacity assessment of Plaintiff by limiting Plaintiff to sedentary work with only occasional interaction with the public. (R. 53). *See Tankisi v. Commissioner of Social Security*, 521 Fed. App'x. 29, 34 (2d Cir. 2013) (functional assessments from treating physicians not required where record is adequate for ALJ to make informed finding on claimant's residual functional capacity). Plaintiff's arguments that the ALJ was required to obtain a functional assessment from a treating source and failed to include a limitation for Plaintiff's mental health relative to Plaintiff's non-exertional

limitations is therefore without merit.  *See Corbiere v. Berryhill*, 760 Fed. App'x. 54, 56-57 (2d Cir. 2019) (no need to remand for additional medical opinion where record is sufficient for ALJ to evaluate a claimant's impairments).  The ALJ's residual functional capacity of Plaintiff is therefore supported by substantial evidence in the record.  Accordingly, Plaintiff's motion on this issue is DENIED.

Further unavailing is Plaintiff's argument that the ALJ relied on a gap in the record in determining that Plaintiff was able to perform routine and repetitive tasks and tolerate occasional interaction with the public because none of Plaintiff's treating physicians provided assessments of Plaintiff's mental impairments, and that Plaintiff's non-attorney representative Mr. Golden erred by not requesting additional time for Plaintiff to provide such evidence.  Plaintiff's Memorandum at 32-35.

Plaintiff and Mr. Golden testified extensively during Plaintiff's administrative hearing on May 11, 2017 (R. 66-78), regarding Plaintiff's previous work, (R. 67-68), educational background (R. 68-69), functional abilities and activities of daily living.  (R. 71-78).  Plaintiff also testified about her ability to drive (R. 79), mental health treatment (R. 80), ability to use her hands, right shoulder pain and knee pain (R. 81-82), nerve conduction tests (R. 83), and ability to walk, stand and sit (R. 83-84), testimony that combined with the testimony of Mr. Golden does not heighten the ALJ's duty to further develop the record thus requiring the ALJ to recontact Plaintiff's mental health treatment providers for additional evidence on Plaintiff's mental functioning. *See Rivera v. Berryhill*, 312 F. Supp. 3d 375, 380 (W.D.N.Y 2018) (citing *Keys v. Berryhill*, 2017 WL 4324689, at *3 (W.D.N.Y. Sept. 29, 2017) (claimant's argument that she be treated as a *pro se* litigant for purposes of the ALJ's further development of the record unavailing

where claimant was adequately represented by a non-attorney representative)). Plaintiff's motion on this issue is therefore DENIED.

## **CONCLUSION**

Based on the foregoing, Plaintiff's Motion (Dkt. No. 8) is DENIED; Defendant's Motion (Dkt. No. 12) is GRANTED. The Clerk of Court is directed to close the file.

SO ORDERED.

/s/ *Leslie G. Foschio*

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


DATED: January 16, 2020
            Buffalo, New York